1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*E-FILED - 6/29/10*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ULYSSES DAVIS, JR.,                    )   No. C 09-0655 RMW (PR)
                                       )
              Plaintiff,               )   ORDER GRANTING MOTION FOR
                                       )   SUMMARY JUDGMENT
     vs.                               )
                                       )
ARNOLD SCHWARZENEGGER, et              )
al.,                                   )
                                       )
              Defendants.              )
_____)

       Plaintiff, a California prisoner proceeding pro se, filed the instant civil rights action

pursuant to 42 U.S.C. § 1983 against defendants on February 13, 2009.  Defendants filed their

motion for summary judgment on December 22, 2009.  All defendants move for summary

judgment, arguing that there is no genuine issue of material fact and that they are entitled to the

judgment as a matter of law.  Plaintiff has not filed an opposition.  Having carefully considered

the papers submitted, the court hereby GRANTS defendants' motion for summary judgment as

to all the defendants named by plaintiff, for the reasons set out below.

## BACKGROUND

       Plaintiff is currently a prisoner at California State Prison, Sacramento ("CSP-

Sacramento"), and was formerly a prisoner at California State Prison, San Quentin ("CSP-San

1   Quentin"). In his complaint, plaintiff alleges that medical staff at CSP Sacramento were
2   deliberately indifferent to his medical needs.

3       Plaintiff alleges that he suffered severe burns in a 2003 car accident, which resulted in his
4   receiving a skin graft in his scalp. (Compl. at 3.) On October 13, 2006, as a prisoner at CSP-San
5   Quentin, plaintiff was admitted to Novato Community Hospital due to a serious infection in his
6   scalp, which one doctor described as potentially fatal. (Id.) At the hospital, plaintiff received
7   antibiotics to treat his infection. Plaintiff arrived at CSP-Sacramento on July 3, 2008, and
8   alleges that the prison medical staff neglected his infection. (Id.) Plaintiff ran out of Hibiclens[1]
9   and at the beginning of December 2008, due to a serious resulting infection, was admitted to the
10  University of California at Davis ("UC Davis") Medical Center on December 30, 2008, where he
11  again received antibiotics. (Id.) Plaintiff was discharged on January 5, 2009. (Id.) He alleges
12  that he was not able to see a doctor for 11 days until he was eventually able to see Dr. Vuong
13  Minh Duc. (Id.) Plaintiff further alleges that Dr. Duc refused to follow the plastic surgeon's
14  regime, and that plaintiff's head is becoming infected again due to lack of medicine. (Id.)

**ANALYSIS**

16  A.   Standard of Review

17       Summary judgment is proper where the pleadings, discovery and affidavits demonstrate
18  that there is "no genuine issue as to any material fact and that the moving party is entitled to
19  judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect
20  the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute
21  as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a
22  verdict for the nonmoving party. Id.

23       The party moving for summary judgment bears the initial burden of identifying those
24  portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine
25  issue of material fact. Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986). Where the moving

27  ───────────────
[1]Hibiclens is a "cleansing treatment" that is used to wash the scalp and hair. (Declaration of
28  Dr. Vuong Minh Duc ("Decl.") at 7.)

1   party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no

2   reasonable trier of fact could find other than for the moving party.  But on an issue for which the

3   opposing party will have the burden of proof at trial, as is the case here, the moving party need

4   only point out "that there is an absence of evidence to support the nonmoving party's case." Id.

5   at 325.

6       Once the moving party meets its initial burden, the nonmoving party must go beyond the

7   pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a

8   genuine issue for trial." Fed. R. Civ. P. 56(e).  The court is only concerned with disputes over

9   material facts and "factual disputes that are irrelevant or unnecessary will not be counted."

10  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  It is not the  task of the court to

11  scour the record in search of a genuine issue of triable fact.   Keenan v. Allen, 91 F.3d 1275, 1279

12  (9th Cir. 1996).  The nonmoving party has the burden of identifying, with reasonable

13  particularity, the evidence that precludes summary judgment.  Id.  If the nonmoving party fails to

14  make this showing, "the moving party is entitled to judgment as a matter of law." Celotex Corp

15  v. Catrett, 477 U.S. at 323.

16      At the summary judgment stage, the court  must view the evidence in the light most

17  favorable to the nonmoving party: if evidence produced by the moving party conflicts with

18  evidence produced by the nonmoving party, the judge must assume the truth of the evidence set

19  forth by the nonmoving party with respect to that fact.  See Leslie v. Grupo ICA, 198 F.3d 1152,

20  1158 (9th Cir. 1999).

21      2.    Analysis

22          a.    Supervisory defendants

23      Here, plaintiff names several high-level defendants in his complaint as having violated

24  his constitutional rights.  These defendants would not have been directly involved in plaintiff's

25  medical care.

26      "In a § 1983 or a Bivens action – where masters do not answer for the torts of their

27  servants – the term 'supervisory liability' is a misnomer.  Absent vicarious liability, each

28

Order Granting Motion for Summary Judgment
P:\PRO-SE\SJ.Rmw\CR.09\Davis655grantmfsj.wpd

Government official, his or her title notwithstanding, is only liable for his or her own misconduct." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (finding under <u>Bell Atlantic Corp.</u> <u>v. Twombly</u>, 550 U.S. 544 (2007), and Rule 8 of the Federal Rules of Civil Procedure, that complainant-detainee in a <u>Bivens</u> action failed to plead sufficient facts "plausibly showing" that top federal officials "purposely adopted a policy of classifying post-September-11 detainees as 'of high interest' because of their race, religion, or national origin" over more likely and non-discriminatory explanations).

A supervisor may be liable under section 1983 upon a showing of "(1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." <u>Redman v. County of San</u> <u>Diego</u>, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc) (internal citations omitted).  A supervisor therefore generally "is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989).

Although plaintiff has made allegations regarding the medical care he has received in prison, there is no allegation that anyone in a high-level position was involved in any way in determining plaintiff's medical care, nor did they cause the alleged violations.  Thus, there is no genuine issue of material fact as to plaintiff's claims against those defendants.   As such, the court grants defendants' motion for summary judgment defendants' motion for summary judgment as to defendants Governor Arnold Schwarzenegger, former CDCR Director Jill Woodford, Warden Robert Ayers, Warden James Walker, Associate Warden Joe Lizarrga, Chief Medical Officer Dr. Sahota, and Health Case Manager Dr. Bal.

> b.   <u>Other defendants</u>

The other defendants that plaintiff names are medical professionals who may have been directly involved with his medical care.  However, other than Dr. Duc, plaintiff fails to link any of them to his claims.  Liability may be imposed on an individual defendant under 42 U.S.C. § 1983 only if the plaintiff can show that the defendant proximately caused the deprivation of a federally protected right.  <u>See</u> <u>Leer v. Murphy</u>, 844 F.2d 628, 634 (9th Cir. 1988).  "A person

1   deprives another 'of a constitutional right within the meaning of section 1983 if he does an

2   affirmative act, participates in another's affirmative act or omits to perform an act which he is

3   legally required to do, that causes the deprivation of which [] the plaintiff complains []'". Leer,

4   844 F.2d at 633 (internal citations omitted).  To defeat summary judgment, plaintiff must "set

5   forth specific facts as to each individual defendant's" actions which violated his rights.  Id. at

6   634.  Even at the pleading stage, "[a] plaintiff must allege facts, not simply conclusions, that

7   show that an individual was personally involved in the deprivation of his civil rights."  Barren v.

8   Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998).  As plaintiff has not alleged any facts, even if

9   true, that indicate that Dr. David Wu, Dr. Sal, Pharmacist Gerald Freitas, Licensed Vocational

10  Nurse Thorpe, or Nurse Hale have affirmatively acted against plaintiff or failed to take steps

11  which they were legally required to do, summary judgment is granted as to these defendants.

                    c.      Defendant Dr. Duc

12
13          Finally, plaintiff does link defendant Dr. Duc to certain actions listed in his complaint.

14  Specifically, plaintiff alleges that he had to be admitted to UC Davis Medical Center in

15  December of 2008 due to not having Hiblicens after arriving at CSP-Sacramento.  (Compl. at 3.)

16  He also alleges that he was not able to see Dr. Duc until 11 days after his January 5, 2009

17  discharge from US Davis Medical Center, and that Dr. Duc's refusal to follow the instructions of

18  the plastic surgeon caused plaintiff's head to become infected again due to "lack of medication."

19  (Id.)

20          Dr. Duc responds that plaintiff actually did receive Hibiclens when he was transferred to

21  CSP-Sacramento, even though his scalp did not show signs of an infection, because his

22  medication list had been transferred from CSP-San Quentin.  (Decl. at 8.)  Dr. Duc adds that

23  when plaintiff returned to CSP-Sacramento from UC Davis Medical Center, he "demanded to be

24  housed in a sterile room and threatened to pull out the [intravenous] line that was delivering

25  antibiotics", and that plaintiff pulled the line out the next day, January 6, 2009.  (Id.)  On January

26  15, 2009, Dr. Duc saw plaintiff to treat "old burn scars on his scalp and hands."  (Id.)  Dr. Duc

27  states that plaintiff's scalp showed no signs of infection and thus did not need medicine,

28  Hibiclens, to treat an infection.  (Id.)  On February 17, 2009, plaintiff declined to attend his

scheduled medical appointment because he was sleeping.  (Id.)  However, later in the day, he "threatened to go 'man down'" if not brought to the medical line.  (Id.)  Plaintiff was brought to the line but his behavior was threatening enough that he was returned to his cell without an examination.  (Id. at 8-9.)

Dr. Duc saw plaintiff again on February 24, 2009, for treatment of his epilepsy and hypertension.  (Id. at 9.)  Dr. Duc examined his scalp and found no infection or scalp blisters.  (Id.)  Plaintiff requested more Hibiclens although he already had some.  (Id.)  Dr. Duc states that he had already discussed with Dr. Sahota and other doctors at a meeting whether plaintiff needed more Hibiclens, and the others agreed with Dr. Duc that he did not.  (Id.)  Dr. Duc states that a few months later, on April 17, 2009, Dr. Moghaddam prescribed Bactrin-DS for plaintiff's scalp.  (Id.)  Dr. Duc emphasizes that plaintiff's scalp condition is a chronic condition, which means that plaintiff's infections will come and go, and that treatment is given according to what plaintiff's symptoms are.  (Id. at 3-4.)

Although neither plaintiff nor Dr. Duc specify what plastic surgeon's orders are in dispute, the January 3, 2009[2] discharge papers for plaintiff indicate that as to his scalp, the instructions were to continue his intravenous line of vancomycin.  (After Hospital Summary dated January 3, 2009, at 1.)

Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment.  See Estelle v. Gamble, 429 U.S. 97, 104 (1976); McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).  A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need[3] and the nature of the defendant's response to that need.  See McGuckin, 974 F.2d at 1059.

---

[2]Plaintiff's discharge was delayed until January 5, 2009, due to there being a lack of beds at CSP-Sacramento.

[3]Here, neither party disputes that plaintiff's medical needs with regard to his scalp are serious.

1    A prison official is deliberately indifferent if he knows that a prisoner faces a substantial

2    risk of serious harm and disregards that risk by failing to take reasonable steps to abate it.

3    Farmer v. Brennan, 511 U.S. 825, 837 (1994).  The prison official must not only "be aware of

4    facts from which the inference could be drawn that a substantial risk of serious harm exists," but

5    he "must also draw the inference."  Id.

6    In order for deliberate indifference to be established, therefore, "there must be a

7    purposeful act or failure to act on the part of the defendant" and resulting harm.  See McGuckin,

8    974 F.2d at 1060; Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir.

9    1985).  Such indifference may be shown where "prison officials deny, delay or intentionally

10   interfere with medical treatment, or it may be shown by the way in which prison physicians

11   provide medical care."  Jett v. Penner, 439 F.3d 1091, 1097 (9th Cir. 2006).  See, e.g., Jett, 439

12   F.3d at 1096-98 (prisoner opposing motion for summary judgment entitled to inference that

13   defendant doctor was aware of contents of grievance, medical slips, and another doctor's

14   aftercare instructions in prisoner's medical record, generating genuine issue of material fact as to

15   defendant's deliberate indifference to need for treatment); Lopez v. Smith, 203 F.3d 1122, 1132

16   (9th Cir. 2000) (en banc) (summary judgment should not have been granted to defendants where

17   plaintiff presented evidence that prison officials failed and refused to follow doctor's orders for a

18   liquid diet for plaintiff whose mouth had been wired shut to treat a broken jaw).

19   However, "[a] difference of opinion between a prisoner-patient and prison medical

20   authorities regarding treatment does not give rise to a § 1983 claim."  Franklin v. Oregon, 662

21   F.2d 1337, 1344 (9th Cir. 1981).  Similarly, merely showing "a difference of medical opinion"

22   regarding the appropriate course of treatment over another is insufficient to establish deliberate

23   indifference.  Toguchi v. Chung, 391 F.3d 1051, 1058, 1059-60 (9th Cir. 2004).

24   In order to prevail on a claim involving choices between alternative courses of treatment,

25   a plaintiff must show that the course of treatment the doctor chose "was medically unacceptable

26   under the circumstances" and that he or she chose this course "in conscious disregard of an

27   excessive risk to plaintiff's health."  Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d

28   330, 332 (9th Cir. 1996) (citing Farmer, 511 U.S. at 837).

1    Here, Dr. Duc is the party moving for summary judgment, and he has shown an absence

2    of a genuine issue of material fact with regard to the care plaintiff received before and after his

3    hospitalization at UC Davis Medical Center.  Plaintiff does not link his allegation about running

4    out of Hibiclens to any particular defendant, which means that even if there were an Eighth

5    Amendment violation, it could not be attributed to Dr. Duc.  Cf. Barnett, 152 F.3d at 1194

6    (requiring plaintiffs to allege facts about how an individual was personally involved in violating

7    their rights).  In addition, although Dr. Duc did not see plaintiff for 10 or 11 days after plaintiff's

8    return to CSP-Sacramento, plaintiff has not shown that he should have been seen earlier in order

9    to alleviate a serious medical problem, or that Dr. Duc knew that plaintiff should have been seen

10   and refused to do so.  Cf. Estelle, 429 U.S. at 104 (requiring both a serious medical need and

11   deliberate indifference to raise an Eighth Amendment claim.).

12   Dr. Duc also shows an absence of a genuine issue of material fact as to his medical care

13   decisions regarding plaintiff after plaintiff's discharge from UC Davis Medical Center.  Plaintiff

14   claims that his scalp again became infected due to lack of medication and that Dr. Duc refused to

15   follow a plastic surgeon's orders.  (Compl. at 3.)  However, plaintiff does not specify what

16   plastic surgeon or orders he is referencing, and plaintiff's records do not reveal any orders given

17   by a doctor at UC Davis Medical Center regarding plaintiff's scalp that Dr. Duc has failed to

18   follow.  Cf. Jett, 439 F.3d at 1097 (deliberate indifferent claim arose where orders for defendant

19   doctor to follow were contained in patient's medical records).  As described above, the court

20   could only find that plaintiff was directed to continue his intravenous vancomycin treatment.

21   (After Hospital Summary at 1.)  In fact, Dr. Duc states that plaintiff himself was the one who

22   pulled out the intravenous line, (Decl. at 8), and plaintiff does not dispute this.  Dr. Duc's

23   declining to prescribe Hibiclens for plaintiff even though plaintiff requested them does not give

24   rise to a deliberate indifference claim on its own.  See Franklin, 662 F.2d at 1344.

25   Moreover, even assuming that there was a plastic surgeon who ordered that plaintiff

26   receive Hibiclens, Dr. Duc's actions were still reasonable.  He showed that he declined to

27   prescribe Hibiclens because he concluded that plaintiff's scalp lacked signs of infection after a

28   thorough search, and that he consulted with other doctors in coming to that decision.  (Decl. at 8-

9.)  Cf. Toguchi, 391 F.3d at 1060 (differing medical opinions do not give rise to a cognizable claim of deliberate indifference).  There is no indication that Dr. Duc's declining to prescribe Hiblicens was medically unacceptable or that he did so in conscious disregard to plaintiff's health.  Cf. id. at 1058.

Although another doctor later did prescribe medication for plaintiff's scalp, (Decl. at 9), that prescription came two months after Dr. Duc's assessment of plaintiff's scalp, which could well have become infected since then.  As Dr. Duc has stated, plaintiff's condition is chronic, which means that the symptoms come and go, and treatment is given accordingly.  (Id. at 3-4.) In sum, plaintiff has not met his burden of showing a genuine issue of material fact as to whether Dr. Duc acted with deliberate indifference to plaintiff's medical needs.

**CONCLUSION**

Defendants' motion for summary judgment is GRANTED.

IT IS SO ORDERED.

DATED:  6/29/10

_____
RONALD M. WHYTE
United States District Judge